IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
NORTHERN DIVISION

In re:                                                     Case No.: 17-30408-KKS
ANNA PATRICIA ROBERTS,                                     Chapter 7
    *Debtor.*

_____                           Adv. Proc.: 17-3014-JCO

ANTHONY RECANATI, *et al.*,
    *Plaintiffs,*
v.

ANNA PATRICIA ROBERTS,
    *Defendant.*

<u>MEMORANDUM OPINION AND ORDER ON</u>
<u>CROSS MOTIONS FOR SUMMARY JUDGMENT</u>

    This matter is before the Court on Cross Motions for Summary Judgment filed by the parties.  (Docs.  18, 23, 42, 44, 45).  The parties have filed their briefs and the matter is ripe for adjudication.  This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the order of reference of the District Court dated October 7, 1986.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has authority to enter a final order.

<u>FACTS[1] AND PROCEEDINGS</u>

    Defendant Anna Roberts filed for chapter 7 relief on May 8, 2017.  On November 3, 2017, the Plaintiffs Anthony (sometimes herein referred to as "Tony") Recanati and Sergio

---

[1] The facts set out in this Order are gleaned from the parties' submissions, their respective responses to those submissions, and the Court's own examination of the evidentiary record. *Davis v. Bank of Am., N.A.*, 2014 WL 5090692, at *1 (N.D. Ala. Oct. 9, 2014).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts that could be established through live testimony at trial.  *Id. (citing Cox v. Adm'r U.S. Steel & Carnegie Pension Fund,* 17 F.3d 1386, 1400 (11th Cir.1994)).

Recanati (hereinafter "Plaintiffs" unless otherwise stated) filed their Complaint alleging the nondischargeability of the debt(s) owed by Debtor, Anna Roberts, to Plaintiffs.  Plaintiffs' Complaint consists of two causes of action: Count I, a request for declaratory judgment that the debt owed by Debtor was obtained by fraud under 11 U.S.C. § 523(a)(4); and Count II, for fraud in the inducement based on Debtor's alleged false statements made with the intent to deceive the Plaintiffs and induce them to rely on Debtor's allegedly false assertions that she had the ability and intent to pay off the debts and liabilities of Jomarser, Inc., d/b/a Recanati's Italian Restaurant (hereinafter "the Company" or "Recanati's" or "the Restaurant"), pursuant to 11 U.S.C. §§ 523(a)(4) and (6).

The events that led up to this case occurred on December 21, 2010 when Plaintiffs and Debtor entered into a written Stock Sale and Purchase Agreement (hereinafter "the Agreement"), wherein Debtor agreed to purchase and Plaintiffs agreed to sell all of Plaintiffs' interest in the Company.  The Debtor was not obligated on any of the company debts prior to the December 21, 2010 signing date, and the conduct of the parties before December 21 is relevant to the Court's analysis set out below.

Debtor retired from the United States Postal Service (hereinafter "Post Office") in late 2013.  (Doc. 42 at 92).  Her annual salary was approximately $65,000.00 to $70,000.00.  (*Id.* at 84).  During the latter year of her career at the Post Office, Debtor patronized the Restaurant and formed a relationship with Company owner Tony Recanati when the restaurant was located on Avalon Road.  (Doc. 42 at 85).  The Restaurant was also co-owned by Sergio Recanati and Anthony Recanati's sister, Cathy Ellis; however, the percentage of ownership is unclear from the pleadings and exhibits filed and the actual percentage is unnecessary for this Court to rule.  At some point in early 2010, Debtor loaned Tony Recanati approximately $8,000.00 to help

improve the restaurant. Debtor characterizes her role during this time period as a "silent investor" in the Restaurant. (*Id.* at 87). Tony Recanati would run the Restaurant, and Debtor would loan the Restaurant money as needed. As a silent investor, Debtor paid the rent for the Restaurant, shopped for and purchased equipment for the Restaurant, used her personal funds to make payroll for the Restaurant, and helped with relocating the Restaurant to a new location on Highway 90. These loans by Debtor to the Restaurant totaled an approximate amount of $60,000.00, leading Debtor to conclude that the Restaurant was in an "unbelievable" amount of debt. (*Id.* at 84-87, 90, 91).

During Debtor's time as silent investor, she was responsible for maneuvering the BP claims process, which resulted in two separate payouts to the Company. The first payout was in the amount of $84,000.00. The second payout was in the amount of $25,000.00, and will be discussed further below.

Because Debtor was the person responsible for handling the claim, when BP distributed the first claim payout, it incorrectly released the $84,000.00 to the Debtor's personal checking account through her social security number, instead of to the Company through its EIN Number. (Doc. 42 at 40). However, as soon as the mistake was discovered, the money was removed from Debtor's personal checking account and placed into the Company's business account on October 21, 2010. (Doc. 42 at 41). Distributions from the first payout were then made to the then shareholders of the Company, Tony Recanati, Sergio Recanati and their sister Cathy Ellis. (Doc. 42 at 42).

Sometime in mid-2010, Cathy Ellis began to suggest that she and the Debtor should buy out Tony Recanati from the Restaurant because he was "running it into the ground" by not coming to work but receiving a salary of $750.00 per week. (*Id.* at 94-95). The Debtor agreed,

and negotiations began for Debtor to purchase the Restaurant from Tony Recanati, Sergio

Recanati, and Cathy Ellis.

The Stock Purchase Agreement

On December 21, 2010, the Debtor signed the Stock Purchase Agreement.  (Doc. 42-3 at

13).  As consideration for the contract, Debtor agreed to assume all debts, liabilities, and

obligations of the Company thereby relieving Plaintiffs of the same, to forgive the personal debts

of Plaintiff Tony Recanati, and to have all personal guarantees, loans, and vendor agreements

paid off or assumed by Debtor within thirty (30) days of the closing on the purported "stock

purchase."[2]  (Doc. 42-3 at 14).  The debts and liabilities included a line of credit with Regions

Bank, a note payable to Regions Bank, an oil spill bridge loan with Pen Air Federal Credit

Union, a balance to the U.S. Food Service, and back tax payments.  (Doc. 42-3 at 14).  There

were approximately $155,717.32 in liabilities, and approximately $35,236.00 in assets of the

Company.  Also as part of the transaction, the parties agreed that the forthcoming $25,000.00

payout from the Company's oil spill claim would go toward paying off the abovementioned

debts and liabilities.  The transaction also required that Debtor forgive all personal debts owed to

Debtor by Anthony Recanati and Cathy Ellis, which Debtor accomplished.  (Doc. 42-3 at 14).

In early 2011, after becoming the sole owner of the Company, Debtor opened a new bank

account for the Company in an effort to better keep track of money coming in and going out.

(*Id.* at 45, 99).  Soon after, the Restaurant received its anticipated second BP claim payout in the

amount of $25,000.00.  This second payout was deposited into the new Restaurant bank account

and, in compliance with the Agreement, was used catch up back rent, vendor accounts, taxes and

other debts that Debtor was unaware of were owed by the Company.  (*Id.* at 99-102).  The

---

[2] The Agreement is titled, "Stock Sale and Purchase Agreement," and refers to the sale of stock certificates 1-5 in the first numbered paragraph; however, there is no evidence that the stock certificates ever changed hands.

Restaurant stayed open for approximately another year until sometime in 2012, when the liquor license expired, and Debtor no longer had any income to keep it open.  (*Id.* at 104).

At some point within 30 days of signing the Agreement, Debtor acknowledged in an undated writing that by signing the Agreement the debts therein became her sole responsibility. (Doc. 42-1 at 18).  The writing is addressed to "To whom it may concern."  (*Id.*).  In another undated writing, Debtor requested an "extension of time to obtain financing to meet the requirements of the original purchase agreement due to complications arising from funding sources." (Doc. 42-1 at 19).  The writing is not addressed to a specific person, but has Anthony Recanati's name at the bottom, presumably where he would be expected to sign.  (*Id.*).  The writing requests an additional 30 days from January 21 to comply with the Agreement.  (*Id.*).  On January 26, 2011, it appears that Anthony Recanati wrote by hand that the "extension is specific to the U.S. Foods, Regions Bank, and Penair debts" only.  (Doc. 42-1 at 20).

### The State Court Lawsuit

On August 14, 2013, Tony Recanati and Sergio Recanati filed a lawsuit against the Debtor in the Circuit Court of Santa Rosa County, Florida (hereinafter, "State Court").  The Complaint alleges three causes of action: Count I Breach of Contract, Count II Fraud in the Inducement, and Count III Unjust Enrichment.  In her answer, Debtor denied the allegations raised in the Complaint.  On March 11, 2014, the Plaintiffs filed a motion for summary judgment on all three Counts alleging that summary judgment was due to be granted on the grounds that Debtor "failed to perform her obligations under the Agreement by failing to pay the debts and liabilities of the Company, by failing to assume the obligations of the Company, and by failing to allocate the proceeds from the oil spill settlement as agreed." (Doc. 42-3 at 2).  On September 23, 2014, the State Court held a hearing and entered an order on the motion stating that the

motion was "granted in part . . . and the Court finds that the [Debtor] breached the subject contract and therefore grants the Motion for Summary Judgment as to liability, only." (Doc. 42-4 at 1). The State Court reserved ruling on the amount of damages, fees, and costs pending separate hearing on the same. (*Id.*). On February 10, 2015, the State Court entered a Final Summary Judgment in favor the Recanatis and against the Debtor stating that the rent payments claimed were satisfied, but that Debtor was responsible for the payroll and sales taxes, "the Penn Air Bridge Loan, the Regions Bank Line of Credit, the Regions Bank account, and the Brady Lo loan." (*Id.* at 3). The Order further directs where payment should be delivered to and the remaining terms of payment of the judgment. The last paragraph of the Order states that the State Court reserves jurisdiction to enforce the "Final Judgment in this matter." At the top of the Order, it appears that Plaintiffs recorded this Judgment on February 11, 2015; however this Court makes no finding as to whether the recording was proper. (*Id.*).

The Plaintiffs encountered problems enforcing the judgment against Debtor and on October 13, 2016, they recommenced the State Court action alleging that Debtor engaged in multiple fraudulent transfers of real property in an attempt to evade her creditors and sought avoidance of those alleged transfers therein. (Doc. 42-5 at 1).

<u>The Petition for Relief and Adversary Proceeding</u>

On May 8, 2017, Debtor filed for Chapter 7 relief. On May 9, 2017, a suggestion of bankruptcy was filed in the State Court case, of which no substantive proceedings had taken place since it was recommenced on October 13, 2016. On November 3, 2017, Tony Recanati and Sergio Recanati initiated this adversary proceeding by filing their Complaint to determine the dischargeability of the debts owed to them pursuant to the State Court Final Judgment. The Complaint alleges two causes of action pursuant to 11 U.S.C. §§ 523(a)(4) and (6). Count I

requests a declaratory judgment that the debt owed by the Debtor was obtained by fraud and thus should be found nondischargeable under 11 U.S.C. § 523(a)(4).

Count II is for fraud in the inducement alleging that Debtor had no ability or intention to pay or assume the debts and liabilities of the Company, and made false statements with the intent to deceive and induce reliance by Plaintiffs in order to obtain the stock and gain control of the Company. Count II is pled pursuant to § 523(a)(4) and (6).[3] However the nature of the facts and the request for relief as pled would more properly fall under Section 523(a)(2)(A), which renders a debt nondischargeable if it was incurred under false pretenses, false representations, or actual fraud. Because the State Court did not expressly state that fraud was or was not present in its Final Order on Summary Judgment, and, in an effort to provide a fair and final analysis of the issues raised herein, this Court will apply Sections (a)(2)(A), (a)(4) and (a)(6) to the facts as pled.

<u>CONCLUSIONS OF LAW</u>

<u>Standard of Review</u>

Motions for summary judgment are governed by FED. R. CIV. P. 56(a), as incorporated by FED. R. BANKR. P. 7056. Rule 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex*

---

[3] Section 523(a)(4) renders a debt nondischargeable if obtained by "fraud or defalcation while acting in a fiduciary capacity." Section 523(a)(6) renders a debt nondischargeable if it was intended to cause willful or malicious injury to another entity or to the property of another entity.

*Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A material fact is one "that might affect the outcome of the suit under governing law. . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*  Conclusory allegations by either party, without specific supporting facts, have no probative value. *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985).

The party seeking summary judgment is responsible for submitting evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "The [bankruptcy] court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in [its] favor." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993).

"Exceptions to the discharge of a particular debt are strictly construed in favor of the defendant." *In re Kanewske*, 2017 WL 4381282, at *6 (Bankr. M.D. Fla. Sept. 29, 2017).  Here, the defendant is the Debtor.  "[T]he denial of a defendant's discharge is an 'extraordinary remedy' and an 'extreme penalty' to the defendant. *Id.*  Therefore, any challenge to a defendant's discharge must be construed strictly against the objecting party and liberally in favor of the defendant. *Id.*

General rules of statutory construction provide that where two statutes conflict, the specific governs over the general. *In re Alexander,* 578 B.R. 669, 678 (Bankr. N.D. Ga. 2017). Here, the standard of review regarding motions for summary judgment under Rule 56 and the standard of review regarding exceptions to discharge under § 523(a) are in conflict.  The case law interpreting § 523(a) requires a strict construction in favor of the Debtor, whereas the case law interpreting Rule 56 requires the Court to construe the evidence in the light most favorable to the nonmoving party.  Given that the case law interpreting the bankruptcy statute provides a

more specific standard of review regarding exceptions to discharge, this Court concludes that the specific bankruptcy statute interpretation controls.  Therefore, applying the concept of specific over general in this case, and pursuant to the case law interpreting § 523(a), this Court strictly construes the evidence against the objecting party and liberally in favor of the Debtor.

### § 523(a)(2)(A) False Pretenses, False Representations and Actual Fraud

Plaintiffs allege that the Debtor made misrepresentations to them regarding her intent and ability to pay off or assume the debts and liabilities of the Company and that she intended to deceive them in order to gain control of the Company from Plaintiffs.  Based on the analysis below, this Court disagrees with Plaintiffs and finds that summary judgment should be entered in favor of the Debtor.

Section 523(a)(2)(A) provides that a debt for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, false representation, or actual fraud is nondischargeable bankruptcy.  The burden of proof for exceptions to discharge is preponderance of the evidence.  *Grogan v. Garner,* 498 U.S. 279, 291 (1991).

To prevail under § 523(a)(2)(A), the plaintiff must prove by preponderance of the evidence that: 1) the debtor made a false representation, or engaged in other materially deceptive conduct, with intent to deceive the creditor; 2) the creditor (or other relevant party) relied on the misrepresentation / deceptive conduct; 3) the reliance was reasonably justified under the circumstances; and 4) the reliant sustained a loss as a result of the fraud/deception.  *In re Kenny*, 2018 WL 4191477, at *4 (Bankr. M.D. Fla. Aug. 30, 2018) (*citing In re Lloyd,* 549 B.R. 282, 291-92 (Bankr. M.D. Fla. 2016).  "Actual fraud precluding discharge consists of any deceit, artifice, trick, or design ... used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."  *Id.* (*citing In*

*re Howard*, 261 B.R. 513, 517 (Bankr. M.D. Fla. 2001)); 4 *Collier on Bankruptcy* ¶ 523.08[1][e]

(16th ed. 2017).  "Proof of fraud in cases involving unfulfilled promises requires a plaintiff to

prove that when a defendant made promises, he knew he could not fulfill them or had no

intention of fulfilling them."  *In re Pupello*, 281 B.R. 763, 766 (Bankr. M.D. Fla. 2002).

Having considered the record and the evidence before it, this Court finds that Plaintiffs

have failed to prove that Debtor engaged in materially deceptive conduct intended to deceive

Plaintiffs.  Plaintiffs failed to establish any evidence that, when Debtor signed the Agreement,

she knew she could not perform the terms of the contract, or had no intention of performing

them.  Instead, the evidence reflects that Debtor believed in keeping the Restaurant alive, and

intended to keep it going by complying with her end of the contract.

Prior to her signing the Agreement, the evidence reflects that Debtor funneled in excess

of $50,000.00 into the restaurant as a "silent investor."  (Doc. 42 at 91).  She assisted Plaintiffs in

relocating the Restaurant in hopes of finding more success in a better location, and purchased

costly equipment, tables and chairs to get the Restaurant up and running at the new location.  She

also testified that despite the amount of debt the Company was in, she believed in the business

and signing the Agreement was her genuine effort to keep the Restaurant operative.  (Doc. 42 at

50, 94).  The Court finds Debtor's behavior to be generous; not deceptive.

After signing the Agreement, Plaintiffs were contractually free from the obligations of

the Company and those obligations thereafter rested on the shoulders of the Debtor.  (Doc. 42-1

at 18).  During the year that she was able to keep the Restaurant afloat, Debtor suffered the

consequences of Plaintiffs' prior actions by having to pay the food vendor, U.S. Foods., in cash

before they would deliver food to the Restaurant because U.S. Foods was so upset with the

previous owners (Plaintiffs).  (Doc. 42 at 63).  Meanwhile, Debtor negotiated a second BP claim,

which generated proceeds of approximately $25,000.00, which she used entirely to pay off Restaurant debt and rent.  It was only after the liquor license expired that she determined she personally no longer had the funds to operate the business and she shut it down.  (Doc. 42 at 104).

The evidence presented regarding Debtor's behavior and intent when she signed the Agreement is compelling, and, considering it in conjunction with the record as a whole, this Court finds that there is no genuine issue of material fact on which a trial might be held regarding Debtor's alleged fraud.  There is no evidence that when Debtor signed the Agreement, that she knew she could not fulfill it or had no intention of fulfilling it.  There is no evidence that she engaged in any materially deceptive conduct intended to induce Plaintiffs into signing over their interests in the Restaurant.

Further, a thorough review of the Agreement itself establishes that there was no requirement therein for the Debtor to have the funding, or a letter of credit, in place in order to comply with the terms of the Agreement.  Plaintiffs have presented no evidence whatsoever that Debtor made any false, incorrect, or misleading statement that she *had* obtained or was substantially certain that she *could* obtain the proper financing to comply with the Agreement. There is no provision to this effect; rather, the Agreement expressly states that such payoff or assumption must occur "within 30 business days of the closing date of this agreement."  (Doc. 42-3 at 14).  There was no mention at all, in the Agreement or otherwise, that Debtor had to have or did have the proper financing in place prior to signing the Agreement.  The fact that she was unable to secure financing thereafter may place her in breach of the contract, but it does not evidence any fraud on her part.

Because Plaintiffs have failed to demonstrate the first element of fraud, the Court will not address the remaining elements, and, any requested relief pursuant to § 523(a)(2)(A) must be denied.  Therefore, having considered the evidence presented and determining that no genuine issue of material fact exists as to whether Debtor engaged in fraud in signing the Agreement, this Court hereby finds that summary judgment is due to be entered against Plaintiffs and in favor of Debtor on the allegation of fraud under § 523(a)(2)(A).

<u>§ 523(a)(4) Fraud in A Fiduciary Capacity</u>

Plaintiffs assert in their Complaint that by handling the proceeds of the BP oil spill claim, a fiduciary relationship was established between Debtor and Plaintiffs, and was violated when Debtor allegedly used the claim proceeds for her own benefit.  Section 523(a)(4) excepts from discharge any debt that was obtained by debtor by fraud or defalcation while acting a fiduciary capacity, embezzlement, or larceny.  Having considered the facts presented, this Court finds there is no genuine issue of material fact regarding Debtor's handling of the claim proceeds, that there was no fiduciary relationship between her and Plaintiffs, and if there was, that she did not violate said relationship.

"To establish fraud while acting in a fiduciary capacity, one must show (1) that the debt results from a fiduciary's defalcation under an express or technical trust; (2) that the debtor acted in a fiduciary capacity with respect to the trust; and (3) that the transaction in question is a defalcation [or fraud] within the meaning of bankruptcy law."  *In re Migell*, 2018 WL 1174890, at *5 (Bankr. M.D. Fla. Mar. 2, 2018) (citations omitted).  "The meaning of "fiduciary capacity" in § 523(a)(4) is a question of federal law."  *In re Arthur*, 589 B.R. 761, 765 (Bankr. S.D. Fla. 2018) (*citing In re Talmo*, 175 B.R. 775 (Bankr. S.D. Fla. 1994)).

The term "fiduciary" as used in § 523(a)(4) does not encompass the traditional application of fiduciary—"a relationship involving confidence, trust, and good faith." *In re Kanewske*, 2017 WL 4381282, at *7 (Bankr. M.D. Fla. Sept. 29, 2017); *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993). "Rather, 'fiduciary' under § 523(a)(4) is narrowly construed and requires the existence of an express or technical trust. An express or technical trust exists when there is: (1) a segregated trust res; (2) an identifiable beneficiary; and (3) affirmative trust duties established by contract or by statute." *In re Kanewske*, 2017 WL 4381282, at *7. Further, the "trust relationship [shall] have existed prior to the act which created the debt in order to fall within the fiduciary capacity exception." *In re Fernandez-Rocha,* 451 F.3d 813, 816 (11th Cir. 2006).

Beginning with the first element that there must be an express or technical trust, this Court finds that Plaintiffs failed to establish, or even plead, the existence of an express or technical trust prior to Debtor signing the Agreement. *Id.* In fact, Plaintiffs presented no evidence of a segregated trust res, an identifiable beneficiary, or affirmative trust duties that existed before the parties signed the Agreement, or that were established by the Agreement itself. *Id.* To the extent the Plaintiffs allege that the BP oil spill claim proceeds are the segregated trust res, and that they are the beneficiaries, this Court finds that no affirmative trust duties were delineated in the Agreement or otherwise, and thus an express or technical trust does not exist. Even if it did exist, this Court finds that the evidence reflects that Debtor properly handled the $25,000.00 BP claim proceeds by paying Restaurant debts as soon as the money was distributed. There is absolutely no evidence whatsoever that Debtor used the proceeds for personal gain. Therefore, even if it can be found that a fiduciary relationship existed based on these facts, this Court finds that Debtor did not breach the alleged fiduciary relationship. Accordingly, this Court

finds that summary judgment is due to be and hereby is entered against Plaintiffs and in favor of Debtor on the § 523(a)(4) claims.  *Id.*

11 U.S.C. § 524(a)(6) Willful or Malicious Injury

To succeed under Section 523(a)(6), a creditor must prove that the injury at issue is both willful and malicious.  *In re Carter*, 2018 WL 4945128, at *6 (Bankr. M.D. Fla. Oct. 11, 2018). Willfulness requires "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another."  *In re Walker,* 48 F.3d 1161, 1163 (11th Cir. 1995). "Malicious means that the debtor's act be "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."  *Id.*  The debtor must commit an act "the purpose of which is to cause injury or which is substantially certain to cause injury."  *In re Carter,* 2018 WL 4945128, at *6; *In re Walker,* 48 F.3d 1161, 1165 (11th Cir. 1995).  A negligent or even reckless act is not sufficient to except a debt from discharge under Section 523(a)(6).  *Id.* When financial harms are alleged, it must be shown that the debtor "actually knew, at the time of the intentional act, that injury was substantially certain to result." *Petroleum Realty I, LLC v. McCravy (In re McCravy)*, 2015 WL 3916811, at *9 (Bankr. S.D. Fla. 2015); *Kane v. Stewart Tilghman Fox & Bianchi Pa (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014).

Here, Plaintiffs have failed to present any evidence whatsoever that Debtor intended to act willfully or maliciously in a way that she knew would injure or would be substantially certain to injure Plaintiffs.  Instead, Plaintiffs present Debtor's deposition testimony which clearly establishes that in signing the agreement, that she wished to keep the Restaurant afloat, and intended to comply with the terms of the Agreement.  Debtor sought at least one extension due to funding issues, but no evidence was presented that Debtor lacked the requisite intent to perform

14

the Agreement, and no evidence was presented that she acted with willful or malicious intent to injure Plaintiffs.  With no showing of an intentional or deliberate act intended to cause injury by Debtor, Plaintiffs have failed to carry their burden of proof pursuant to § 523(a)(6).  Summary judgment is due to be and hereby is entered against Plaintiffs and in favor of Debtor on the § 523(a)(6) claim.

CONCLUSION

"Exceptions to discharge are construed strictly against the complaining party and liberally in favor of the debtor in order to effectuate the fresh start policy that is the primary purpose of the Bankruptcy Code." *Rutland v. Petersen (In re Petersen),* 323 B.R. 512, 516 (Bankr. N.D. Fla. 2005).  Construing the evidence liberally in favor of the Debtor, the Court finds that though Debtor may have breached her contract with Plaintiffs, she did not engage in fraud in doing so.  Therefore, because a judgment for breach of contract does not fall under any of the exceptions to discharge listed in § 523(a), this Court finds that the debt owed to Plaintiffs by Debtor pursuant to the State Court judgment is dischargeable.

For the reasons stated herein, this Court finds that Plaintiffs have failed to prove that they are entitled to judgment as a matter of law as to any type of fraud or willful and malicious injury as raised Count II of the Complaint.  Because the Court finds in favor of Debtor on all substantive causes of action raised in Count II, Plaintiffs' Count I request for declaratory judgment that the debt was obtained by fraud must also be DENIED.  Accordingly, summary judgment is due to be and hereby is GRANTED in Debtor's favor as to all Counts in the Plaintiffs' Complaint.

This is a final order and resolves all causes of action raised in the Plaintiffs' Complaint.

The trial of this matter that is set on March 29, 2018 at 10:00 a.m. is hereby cancelled.  The

Clerk is hereby directed to close this adversary proceeding as soon as practicable.

Dated:  December 20, 2018

_____
JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE